# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 216 | **DATE** | 2/22/2001 |
| **CASE TITLE** | Ryan vs. Trans Union | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Emended Memorandum Opinion and Order. Defendant Fleet's motion for reconsideration is denied for the reasons stated in open court on 2/22/01. Defendant Universal's Rule 59(e) motion to correct judgment is granted. The Court's 2/8/01 Memorandum Opinion and Order, reported at 2001 WL 128159(N.D.Ill.2/9/01) is vacated. Defendants' motions for attorney's fees (64-1,65-1) are granted in part and denied in part. Pursuant to 15 USC 168n(c), the Court orders plaintiff Kerry Ryan to pay $3,168 to defendant Universal Card Services and $1,091.50 to defendant Fleet Credit Card Services.

(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 2 6 2001 | |
| | Notified counsel by telephone. | | date docketed | 86 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR6 | courtroom deputy's initials | FEB 25 PM 3:02 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KERRY RYAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 99 C 216 |
| ) | |
| TRANS UNION CORPORATION; EXPERIAN ) | |
| INFORMATION SOLUTIONS, INC.; ) | |
| EQUIFAX CREDIT INFORMATION ) | |
| SERVICES; CONSUMER DISCLOSURE ) | DOCKETED |
| CENTER; PAC MORTGAGE CREDIT ) | |
| REPORTS; AT&T UNIVERSAL CARD; ) | FEB 2 6 2001 |
| ADVANTA NATIONAL BANK, f/k/a Colonial ) | |
| National Bank USA; COLDATA COLLECTION ) | |
| COMPANIES, INC.; and COMMERCIAL ) | |
| FINANCIAL SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In January 1999, Kerry Ryan filed an action against five credit reporting agencies (Trans Union Corporation, Experian Information Solutions, Inc., Equifax Credit Information Services, Consumer Disclosure Center, PAC Mortgage Credit Reports); two credit card issuers (AT&T Universal Card and Advanta National Bank); and two collection agencies (Coldata Collection Companies, Inc. and Commercial Financial Services, Inc.). Ryan later voluntarily dismissed his claim against Consumer Disclosure Center for reasons that are not disclosed; he dismissed his claim against Commercial Financial Services after it filed for bankruptcy; and he settled with Trans Union, Experian, PAC, Equifax, and Coldata. This left only his claims against AT&T

actually called Universal Card Services Corp. – and Advanta – by that time known as Fleet Credit Card Services. On August 3, 2000, the Court granted summary judgment in favor of Universal and Fleet (as we will refer to them for the remainder of this Memorandum Opinion). Universal and Fleet have moved for an award of attorney's fees against Ryan and/or his counsel Christopher Langone. For the reasons stated below, the Court grants defendants' motions in part as to Ryan but denies them as to Langone.

## Background

In his complaint, Kerry Ryan alleged that he and his wife Katie decided to separate in June 1996 and that after making that decision, Katie fraudulently used Kerry's personal information to obtain credit cards from Universal and Fleet, used the cards to purchase goods in Kerry's name, and failed to make payments after receiving statements from Universal and Fleet. Collection efforts by Universal and Fleet ensued. In March 1997, Kerry alleged, he informed Universal that the card had been issued to Katie in his name without his permission; he nonetheless received, in May 1997, a debt collection letter from an agency acting on Universal's behalf. Kerry alleged that after receiving the letter, he sent further correspondence to Universal explaining that the card had been issued to Katie in his name without his permission, asking it to cease collection efforts directed towards him, and requesting an investigation of fraudulent activity on the account. Despite this, Kerry alleged, he continued to receive debt collection letters. He claimed that collection efforts continued through October 1998 despite his repeated communications to Universal that the card had been fraudulently obtained by Katie.

With regard to Fleet, Kerry alleged that in December 1996, after he had advised Fleet of the circumstances under which he claimed Katie had fraudulently obtained a credit card in his

2

name, Fleet replied that it would not honor his claim of fraudulent activity because it considered the matter "to be a domestic problem." In March 1997, Kerry again advised Fleet that the card had been obtained fraudulently by Katie and that charges had been made on the account without his knowledge or permission. He alleged that in June 1997, Fleet sold the account to Commercial Financial Services without telling it that Kerry disputed the charges. Commercial Financial Services then began collection efforts but stopped in July 1998 after Kerry advised the company of the dispute.

Ryan alleged that each of the credit reporting agencies had violated the Fair Credit Reporting Act by failing to adopt and follow reasonable procedures to ensure the accuracy of credit information and the deletion of false data. Cplt., Counts 1-5. He claimed that the debt collectors had violated the Fair Debt Collection Practices Act by attempting to collect amounts that he did not owe; he also alleged that Coldata had sent a letter which threatened action which it could not legally take. Cplt., Counts 6, 9. Ryan's claims against Universal and Fleet were brought pursuant to the Fair Credit Reporting Act. He alleged that they had exercised insufficient care in processing the credit card applications, in verifying the identity of the person making purchases at the point of sale, and in verifying the debts once the accounts became delinquent. He also claimed that Universal and Fleet had "continually added, stored, maintained and disseminated personal and credit information about Ryan which is false, erroneous and misleading without employing procedures to insure the accuracy of the information" and had failed to conduct a timely reinvestigation after the credit reporting agencies advised that Ryan was disputing the information that Universal and Fleet had provided. With regard to Universal, Ryan also alleged that after receiving his March 1997 letter, the company failed to advise

3

Experian and Equifax that the information it had provided was in dispute. Cplt., Counts 7 & 8.

Ryan was deposed on August 4, 1999.[1] Universal and Fleet have submitted excerpts of his deposition. Because they did not submit the entire deposition in connection with the present motion, we are left to guess to some extent at what was said. It appears that Ryan conceded – contrary to the allegations in his complaint – that the Universal account had been opened sometime in 1995, before he and Katie were separated. Ryan Dep. 45-46. He still appeared to claim at one point that he had been unaware of the account, *see id.* 54, but he eventually conceded that he had no problem with charges Katie made on the account at least through May 1996. *Id.* 59, 73. He contended that sometime around their separation, Katie "went hog-wild with credit cards, the ones that I wasn't even aware of, and started charging and charging and charging, knowing that she was going to be setting up me for her to go to an attorney and get the divorce proceeding going, you know, setting up the trap so to speak." *Id.* 62. He indicated that after the separation, his divorce attorney advised him that "you ought not to be paying on this. You can write a letter to Universal explaining these debts are not yours .... And at that time was when I stopped making any payments to Universal or the other one that was in dispute." *Id.* 74. However, though Ryan was aware that Katie had access to a credit card that was in his name, there is no indication that he took any steps to advise Universal that she was no longer authorized to use the account until after he got the bills that eventually gave rise to his claim against Universal.

As to Fleet, though Kerry testified that he was unaware that a credit card had been issued

---

[1] Not all of the above-referenced settlements had yet been concluded at the time of the deposition.

4

in his name (by Colonial National Bank, the predecessor of Fleet's predecessor Advanta), Fleet evidently produced a copy of the credit application from 1992, signed by Kerry, that led to the issuance of the card. Again, Kerry testified generally that he had no problem with Katie's use of their credit cards until around the time of their separation, and he evidently made no effort to advise Fleet that Katie was no longer authorized to use the account until after he got the bills that eventually gave rise to his claim against Fleet.

The materials provided by Fleet also reflect that in May 1998, a judgment dissolving Kerry and Katie's marriage was entered in the Circuit Court of Cook County. Kerry was represented by a different attorney than the one who represents him here. The judgment provided that Kerry and Katie would each be responsible "to pay their own debts accumulated in their own names." It did not specifically address what was to become of the charges Katie had made allegedly without authority on the credit cards issued in Kerry's name. Fleet seems to think the meaning of the judgment is obvious: Ryan was admitting responsibility for Katie's credit card charges. This, however, is anything but clear; Katie's charges might have been accumulated in Kerry's name, but they were not "his own debts." In short, the divorce judgment adds nothing to the Court's analysis.

### The summary judgment motions

In December 1999, Universal and Fleet moved for summary judgment. They contended that furnishers had no legal duties under FCRA until September 30, 1997, when an amendment to FCRA took effect requiring a furnisher of credit information to conduct an investigation and correct inaccuracies when it receives a notice from a credit reporting agency that a consumer is disputing credit information. *See* 15 U.S.C. §1681s-2(b)(1). They argued that all of Ryan's

requests to them had taken place before the statute's effective date. Ryan conceded that Universal and Fleet's obligations under §1681s-2(b)(1) did not exist prior to September 30, 1997 and that he had initiated no contacts with credit reporting agencies after that date. He contended, however, that in March 1999 (after this lawsuit was filed), a credit reporting agency had sent both Universal and Fleet consumer dispute verification forms concerning Ryan, which he claimed triggered their duties under the statute. With regard to Universal, however, Ryan had no evidence that the company had failed to comply with its statutory obligations. With regard to Fleet, the Court found that there was no evidence that the communication from the agency "was anything more than a rehash of the dispute that Fleet had dealt with back in 1996 and early 1997. ... What we have here ... is basically an attempt to drag out an old dispute, polish it up, and call it new. We see no basis to permit plaintiff to end-run the statute's effective date in this way." *Ryan v. Trans Union Corp.*, No. 99 C 216, 2000 WL 1100440, at *2 (N.D. Ill. Aug. 4, 2000). The Court rejected Ryan's argument.

Ryan also raised a claim of negligence against Universal and Fleet, arguing that they were negligent in investigating and accepting Katie's application for credit. We held, however, that the FCRA does not give rise to a cause of action on this basis. *Ryan,* 2000 WL 1100440, at *2-3. For these reasons, the Court granted Universal and Fleet's motion for summary judgment.

On August 17, 2000, the Court entered a final order dismissing the claims against Universal and Fleet. On that date, defendants indicated that they might petition the Court for attorney's fees; the Court entered an order giving them thirty days to file any such motions.

### The motions for attorney's fees

On September 18, 2000, Universal and Fleet moved for an award of attorney's fees

6

pursuant to 15 U.S.C. §1681n(c), which provides that "[u]pon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding tot he pleading, motion, or other paper." When the motion was presented for hearing on September 21, 2000, the Court inquired of counsel whether their claim was limited to that statute; they replied, without equivocation, that it was. By that time, the thirty day period set by the Court on August 17 had expired.

At the September 21 hearing, Ryan's counsel objected to defendants' motions on the grounds that they did not set forth the fee amounts requested or provide billing detail, contending that this violated Local Rule 54.3. The Court gave defendants permission to provide this information. However, defendants did not ask for time to supplement their legal arguments in support of their request for fees. Three weeks later, Universal evidently thought the better of this. On October 12, 2000, without seeking leave of court, it supplemented its fee motion with a request for an award of attorney's fees pursuant to 28 U.S.C. §1927. Fleet waited nearly seven more weeks to follow suit, filing a similar supplement on November 30, 2000.

## Discussion

Defendants rely on two statutes in seeking to recover their attorney's fees: 28 U.S.C. §1927 and 15 U.S.C. §1681n(c). We will address first their request for an award of fees against Ryan's attorney and second their request for an award of fees against Ryan himself.

1.  **Request for fees against plaintiff's attorney**

Defendants rely on two statutes in seeking to recover their attorney's fees against Ryan's

7

attorney: 28 U.S.C. §1927 and 15 U.S.C. §1681n(c). Section 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct."

Defendants' request for a fee award pursuant to section 1927 was untimely. The Court's August 17, 2000 order specifically required the parties to submit any motions for attorney's fees within 30 days.[2] Defendants did so, submitting their initial requests on September 18, 2000, but those requests relied exclusively upon 15 U.S.C. §1681n(c). This was no mistake; the Court inquired of defendants' attorneys on September 21 and was advised that they were relying only on that provision. In short, defendants' counsel confirmed that their motions were complete, except for the required fee detail, and they never sought to extend the time for filing attorney's fee motions. Their later "supplement" was filed outside the time limit imposed by the Court, and they have cited no reason (at least no good one) why they could not have made the request within the time limit the Court had set. For these reasons, the Court concludes that defendants' requests pursuant to 28 U.S.C. §1927 were untimely and will not consider those requests.

Section 1681n(c) does not expressly provide that a party's attorney may be compelled to pay his opponent's attorney's fees. Defendants have cited nothing in the statute's legislative history, nor has the Court found anything in its own research, indicating that Congress intended

---

[2] Assuming Local Rule 54.3 applies to defendants' motions – a point evidently disputed by Universal, *see* Universal Supp. Filing in Support of Mot. for Atty's Fees, at 2 fn.2 – that Rule requires the motion to be filed no later than 90 days after the entry of judgment "[u]nless the court's order includes a different schedule for such filing." Here the Court did set a different schedule, requiring fee motions to be filed within 30 days of August 17.

8

to authorize a court to impose fees against an attorney. Attorney's fee statutes of the type at issue here – those that permit recovery by a prevailing party and are silent as to who may be required to pay the award – have consistently been read to permit a fee award only against a party, not against the party's attorney. *See, e.g., Corneveaux v. CUNA Mutual Insurance Group,* 76 F.3d 1498, 1508-09 (10th Cir. 1996) (42 U.S.C. §2000e-5(k)); *Brown v. Borough of Chambersburg,* 903 F.2d 274, 276 (3d Cir. 1990) (42 U.S.C. §1988) (citing cases); *Hamer v. County of Lake,* 819 F.2d 1362, 1370 (7th Cir. 1987) (42 U.S.C. §1988); *Quiroga v. Hasbro, Inc.,* 934 F.3d 497, 504 (3d Cir. 1991) (42 U.S.C. §2000e-5(k)). *See generally Roadway Express, Inc. v. Piper,* 447 U.S. 752, 761 (1980) (indicating that fees under 42 U.S.C. §1988 may be recovered only against a party, not the party's attorney). The Court concludes that §1681n(c) does not authorize imposition of attorney's fees upon a party's lawyer.

## 2. Request for fees against plaintiff

The only basis cited by defendants for their request to impose their attorney's fees on Ryan himself is §1681n(c); 28 U.S.C. §1927 permits an award only against counsel. Section 1681n(c) requires a showing that a pleading, motion, or paper was filed "in bad faith" or for purposes of harassment. The term "bad faith," as it is ordinarily used in the attorney's fee context, requires a showing either that the party subjectively acted in bad faith – knowing that he had no viable claim – or that he filed an action or paper that was frivolous, unreasonable, or without foundation. *See, e.g., Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 421 (1978) (42 U.S.C. §2000e-5(k)). The Court rejects defendants' argument that as used in §1681n(c), "bad faith" should be construed to encompass a broader range of conduct than this; they have provided nothing from the statute, legislative history, or any case interpreting §1681n(c) that

9

Congress intended anything more wide-sweeping than the commonly accepted meaning of the term bad faith.

The predicate for Ryan's claims against Universal and Fleet— that Katie had obtained the cards fraudulently around the time of their separation – was untrue. But although defendants argue that Ryan had to know this at the time he filed the lawsuit, they have failed to establish that this is so. The evidence indicates that Katie Ryan, not Kerry Ryan, handled the family finances. For this reason and in view of Ryan's consistent claims, long before filing suit, that Katie had obtained the credit cards fraudulently, the Court is inclined to give Ryan the benefit of the doubt and concludes that defendants have failed to establish that he actually realized, at the time he filed suit, that his core allegations were untrue.

By the time Ryan was deposed, it had become clear that the original factual underpinning of his claims was no longer valid. This, however, does not permit the Court to impose sanctions under §1681n(c) for Ryan's failure to withdraw his complaint at that point. The statute requires a showing that a document was *filed* in bad faith; in addressing a similar issue under the former version of Federal Rule of Civil Procedure 11, the Seventh Circuit held that the rule (which imposed sanctions for *signing* a baseless pleading, motion, or paper) did not impose an obligation to withdraw or revise a pleading or motion that later turned out to be baseless. *See Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1200-01 (7th Cir. 1990).

The only paper that Ryan filed after the deposition that defendants identify as potentially meeting §1681n(c)'s bad faith standard was his memorandum opposing Universal and Fleet's motions for summary judgment. Ryan did not try to convince the Court to ignore the effective date of the previously-discussed FCRA amendments concerning furnishers of credit information;

he conceded that those amendments did not apply to conduct occurring before September 30, 1997. His first argument was that after the filing of the lawsuit, both Universal and Fleet had received notices of Ryan's dispute from Experian and that this triggered their obligations under the statute even though the dispute was of an earlier vintage. Though the Court rejected this argument on the merits, it certainly was not legally frivolous. However, even if the Court had agreed with Ryan, it would not have helped him with regard to Universal: Experian's interrogatory answers indicated that Universal had complied with its statutory duty to respond to Experian's request, and Ryan had no contrary information. Under the circumstances, Ryan's argument as to Universal was frivolous and without foundation.

Ryan made a second argument in opposing summary judgment that meets §1681n(c)'s bad faith standard: his claim that both Universal and Fleet could be held liable for their negligence in issuing the credit cards to begin with. This argument was frivolous not necessarily because the theory was legally meritless, but rather because it had no factual support: it was crystal clear at that point that the credit cards had not been issued at or after the Ryans' separation, contrary to Ryan's original allegations. Ryan had been aware of both cards prior to the separation and had made no objection to their issuance. Thus even if a plaintiff might, in the abstract, be able to maintain a claim for negligent issuance of a credit card, Ryan had no factual basis for such a claim in this case. The argument was frivolous and without foundation.

What this means is that Ryan's opposition to Universal's summary judgment motion was frivolous in its entirety, and his opposition to Fleet's motion was frivolous by half. Ryan should have withdrawn his claims against Universal when faced with its summary judgment motion, and he should have limited his response to Fleet's motion to the single non-frivolous argument we

11

have identified.

Section 1681n(c) authorizes an award of the reasonable fees incurred in responding to a paper filed in bad faith. The Court will require Ryan to pay the reasonable attorney's fees Universal incurred in replying to Ryan's opposition to summary judgment and one-half the reasonable attorney's fees that Fleet incurred in making its reply. The Court has reviewed Universal's submission and makes the following fee award, which covers the time spent from January 20, 2000 through February 3, 2000:

    Craig Varga:   6.4 hours at $225 =   $1440

    Rachel Hart:   12.8 hours at $135 =   1728

    Total:                                 $3168

With regard to Fleet, the Court makes an award of $1091.50, which represents one-half of the time spent by attorney D. Schmidt from January 6 through January 18, 2000, at his hourly rate of $185.

## Conclusion

For the reasons explained above, defendants' motions for attorney's fees [64-1, 65-1] are granted in part and denied in part. Pursuant to 15 U.S.C. §1681n(c), the Court orders plaintiff Kerry Ryan to pay $3,168 to defendant Universal Card Services Corp. and $1,091.50 to defendant Fleet Credit Card Services. Defendants' motions are otherwise denied.

                                                            MATTHEW F. KENNELLY
                                                            United States District Judge

Date:   February 22, 2001